UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JUAN ANDRES JIMENEZ BENAVIDES,<br>Petitioner,<br>v.<br>JULIO HERNANDEZ, *et al.*,<br>Respondents. | Case No. C26-2919-MLP<br>ORDER |

Petitioner Juan Andres Jimenez Benavides, through counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging his redetention by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center in Tacoma, Washington. (Dkt. # 1.) Respondents filed a return (dkt. # 8), supported by the sworn declaration of ICE Deportation Officer Freite Subero (dkt. # 9).[1] Petitioner filed a traverse. (Dkt. # 10.) Having considered the parties' submissions and the governing law, the Court GRANTS in part the petition (dkt. # 1).[2]

[1] Petitioner requests the Court strike Officer Subero's declaration. (Dkt. # 10 at 3.) Even considering the declaration, the Court finds relief warranted. Accordingly, the Court DENIES the request as moot.

[2] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 6.)

## I. BACKGROUND

Petitioner, a citizen of Venezuela, entered the United States without inspection in September 2023 and was apprehended by border patrol. (Dkt. # 1, ¶¶ 21-22; Subero Decl., ¶¶ 3-4.) On October 1, 2023, Petitioner was released on an Order of Release on Recognizance ("OREC") and issued a Notice to Appear ("NTA") charging him as removable under 8 U.S.C. § 1182(a)(6)(A)(i). (Dkt. # 1, ¶ 22, Exs. A-B; Subero Decl., ¶¶ 5-6.) The OREC imposed conditions, including obtaining written permission before changing residence. (Dkt. # 1, Ex. B at 2.)

Petitioner moved with his family to Oregon and, in August 2024, he filed a Form I-589 Application for Asylum and received a work permit. (Dkt. # 1, ¶ 23; Subero Decl., ¶ 7.) He reported for ICE check-ins as required. (Dkt. # 1, ¶¶ 23-24.)

Officer Subero states in the declaration that on September 19, 2024, Petitioner was served with a superseding NTA with an Immigration Court date in Portland, Oregon, although no documentation is provided. (Subero Decl., ¶ 8.) Officer Subero states that on December 17, 2024, Petitioner appeared in Immigration Court. (*Id.*, ¶ 9.)

Officer Subero asserts Petitioner failed to appear at his last scheduled check-in, on September 3, 2025. (Subero Decl., ¶ 10.) Petitioner states he arrived on time but the Portland ICE facility was closed due to protests. (Dkt. # 1, ¶ 24.) He tried to call the ICE office but there was no answer, and ICE never notified him of a new check-in date. (*Id.*)

Officer Subero asserts that in April 2025, Petitioner's Form I-765 Application for Employment Authorization was received, providing a "different residential address than the one located in Portland, Oregon" but Petitioner had not notified ICE or the Immigration Court of a

change of address. (Subero Decl., ¶ 12.) However, Petitioner provides his I-765 Notice of Approval, which was sent to a Portland address. (Dkt. # 10 at 4, Ex. L.)

On July 8, 2026, Petitioner was detained by ICE agents when he arrived at his place of work in Happy Valley, Oregon. (Dkt. # 1, ¶ 25; Subero Decl., ¶ 13.) He asked why he was being redetained and was told it was because of "a report." (Dkt. # 1, ¶ 24.) Officer Subero states Petitioner was redetained because he "had no lawful status" and "had violated the conditions of his OREC, including failing to report for a scheduled check in." (Subero Decl., ¶ 13.)

According to Officer Subero, Petitioner appeared before an Immigration Judge ("IJ") in his removal proceedings on July 24, 2026, and was granted a continuance. (Subero Decl., ¶ 14.) On August 7, 2026, the IJ found Petitioner removable and continued the proceedings to allow Petitioner an opportunity to pay the required fee for his pending asylum application. (*Id.*, ¶ 15.) Petitioner appeared on August 25, 2026, and the IJ continued proceedings due to his attorney's non-appearance. (*Id.*, ¶ 16.) Petitioner was next scheduled for a master calendar docket on September 15, 2026. (*Id.*, ¶ 17.) What occurred there is not in the record before this Court. Petitioner states that, prior to redetention, his asylum case was scheduled for hearing in May 2027. (Dkt. # 1, ¶ 24.)

On August 31, 2026, Petitioner filed the instant petition. (Dkt. # 1.)

## II. DISCUSSION

Petitioner contends his redetention violated his Fifth Amendment right to procedural due process, and seeks immediate release. (Dkt. # 1, ¶¶ 45-47.) Respondents argue that his redetention was mandatory, and that any relief should be limited to ordering a bond hearing. (Dkt. # 8 at 4-6.)

**A. Legal Standards**

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner may obtain relief by proving by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

**B. Analysis**

*1. Statutory Basis for Redetention*

Detention of noncitizens is governed by §§ 235-36 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. §§ 1225-26. Section 1226(a) provides the "default rule" allowing discretionary detention of noncitizens "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1225 provides for mandatory detention for "applicants for admission" who are "seeking admission." 8 U.S.C. § 1225(b)(2)(A). In a recent decision, the Ninth Circuit "conclude[d] that § 1225(b)(2)(A), based on its text and context, is best construed as applying to aliens entering the United States at the border. Section 1226, by contrast, is best understood as governing inadmissible and deportable aliens present in the interior of the United States." *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1172 (9th Cir. 2026).

Respondents contend Petitioner "may lawfully be detained under 8 U.S.C. § 1225(b)(2)(A)" because he was apprehended at the border. (Dkt. # 8 at 4.) Given the Ninth Circuit's interpretation of §§ 1225(b) and 1226(a), however, § 1225(b) is not the applicable framework here because Petitioner was redetained within the interior of the United States. While Respondents seek to distinguish *Rodriguez Vazquez* because petitioners there had not been

initially detained at the border and then released, the Ninth Circuit's holding clearly interprets the language in § 1225(b) in a manner inconsistent with Respondents' position.

Even if *Rodriguez Vazquez* were not directly on point, Respondents acknowledge that courts in this district have found noncitizens released on ORECs to be detained under § 1226(a). (Dkt. # 8 at 5.) Here, Petitioner's OREC expressly states that he is being released under "section 236 of the Immigration and Nationality Act," codified at 8 U.S.C. § 1226. (Dkt. # 1, Ex. B at 2; *see also id.* at 3 (Notice of Custody Determination issued pursuant to § 1226).) Accordingly, and consistent with its prior decisions as acknowledged by Respondents, this Court finds that Petitioner's detention falls under § 1226(a). *See, e.g.*, *Francisco Rodas v. Scott*, 2026 WL 2620255, at *4 (W.D. Wash. Sept. 4, 2026) ("Allowing Petitioner to remain released and ostensibly subject to conditions of his [order of supervision] for the last eight years undermines any characterization of Petitioner's detention as mandatory."). The Court now turns to Petitioner's due process claim.

*2. Due Process*

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189,

1206-07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. Aug. 19, 2025) (collecting cases).

Respondents do not challenge Petitioner's analysis of the *Mathews* factors, and the Court concludes that all three favor Petitioner. Petitioner's interest in remaining free from physical confinement is a substantial liberty interest. *See Zadvydas*, 533 U.S. at 690; *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. Sept. 12, 2025).

The risk of erroneous deprivation is high where, as here, redetention relied on disputed factual circumstances. Respondents do not dispute that the ICE office was closed on the date Petitioner was scheduled to appear, nor do they explain how he was supposed to check in to a closed facility. And, contrary to the claim that he moved from Portland, Petitioner provides his I-765 approval showing an address in Portland. These factual issues demonstrate a high risk of error, emphasizing the value pre-deprivation process would have provided. As stated in *M.Z.H. v. Hermosillo*, "[t]he factual justification for Petitioner's detention should be resolved at a pre-deprivation hearing, rather than resolved after the fact by this Court." 2025 WL 3718655, at *5 (W.D. Wash. Sept. 23, 2025) (citing *Rodriguez Diaz v. Kaiser*, 2025 WL 3011852, at *10 (N.D. Cal. Sep. 16, 2025)).

Finally, while the government has legitimate interests in enforcing immigration laws and ensuring appearance at proceedings, Respondents provide no reason that a short, pre-deprivation custody hearing before redetention would materially impede those interests, and make no showing of urgency that would make a pre-deprivation hearing impracticable. Custody and bond hearings are routine, and courts have repeatedly found the incremental administrative burden of such hearings modest relative to the risk and consequences of erroneous detention. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).

In sum, the *Mathews* factors strongly favor Petitioner. Habeas relief is therefore warranted. Given the absence of lawful process at the outset of redetention and the lack of exigent circumstances, release is the appropriate and constitutionally required remedy. This conclusion aligns with a broad consensus among district courts. *See*, *e.g.*, *Rojas v. Almodovar*, 2025 WL 3034183, at *8 (S.D.N.Y. Oct. 30, 2025) (Where "detention was invalid at its inception[,]" petitioner is "entitled to release."); *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025).

Respondents assert that "the appropriate form of relief" would be to require a bond hearing, but provide no authority directly on point for this proposition. (Dkt. # 8 at 6.) They cite to a case where a petitioner was denied habeas relief because he had already had a bond hearing and "the IJ's determination that he presents a flight risk and danger to the community [was] a separate basis for the legality of his custody." *Castulo-Cerro v. Hermosillo*, 2026 WL 395324, at *2 (W.D. Wash. Feb. 12, 2026) (alterations in original omitted). That petitioner, a member of the *Rodriguez Vazquez* class, had not previously been released and accordingly lacked a protected liberty interest, unlike Petitioner here. Respondents also cite a case brought by a *pro se* petitioner who apparently did not request immediate release and who had already been ordered removed. *See Velasquez v. Scott*, 2026 WL 820822 (W.D. Wash. Mar. 5, 2026). Lastly, they cite a case where the Court ordered a new bond hearing untainted by the IJ's erroneous application of § 1225(b), but denied immediate release because the petitioner had not been subject to an order of release or supervision that established a liberty interest. *Garcia Gabriel v. Hermosillo*, 2026 WL 194233, at *5 (W.D. Wash. Jan. 26, 2026). Petitioner here had an established liberty interest, however.

Courts in this District generally find that a post-deprivation hearing is not the appropriate remedy for a constitutionally deficient redetention because the hearing "occur[s] after the fact" and "cannot prevent an erroneous deprivation of liberty." *See, e.g.*, *E.A. T.-B.*, 795 F. Supp.3d at 1324; *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1204 (W.D. Wash. 2025). The Court similarly finds that restoring Petitioner to the status he held prior to his erroneous deprivation (*i.e.*, released in the United States and subject to reasonable conditions) is the appropriate remedy.

*3. Injunctive Relief*

Petitioner further seeks a permanent injunction barring any future redetention without notice and a hearing prior to redetention, with the government bearing the burden of proving danger or flight risk by clear and convincing evidence. (Dkt. # 1 at 12-13; *see also* dkt. # 10 at 13-15.) A permanent injunction requires a "cognizable danger of recurrent violation," not just a past violation. *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003); *see Torres v. Hermosillo*, 2026 WL 145715, at *8 (W.D. Wash. Jan. 20, 2026).

Petitioner cites cases where injunctive relief was granted because petitioners had been "identified as targets for detention." *Espinoza Palacios v. Hermosillo*, 2026 WL 686138, at *10 (W.D. Wash. Mar. 11, 2026); *see also Nguyen v. Bondi*, 2026 WL 183819, at *6 (W.D. Wash. Jan. 23, 2026). Petitioner has not made a comparable showing in this case, however.[3] Here, the record shows no specific, real, and immediate threat that Petitioner will again be redetained without due process or in violation of applicable regulations. His request for permanent injunctive relief is therefore denied.

---

[3] In the remaining cases Petitioner cites, future redetention without notice and hearing was prohibited, but reasoning was not provided for that portion of the decision. (*See* dkt. # 10 at 13-14 (citing *Tzafir v. Bondi*, 2026 WL 74088, at *5 (W.D. Wash. Jan. 9, 2026); *Yuksek v. Bondi*, 2026 WL 60364, at *5 (W.D. Wash. Jan. 8, 2026); *Wana v. Bondi*, 2025 WL 3628634, at *6 (W.D. Wash. Dec. 15, 2025)).)

## III. CONCLUSION

Based on the foregoing, the Court hereby ORDERS as follows:

(1) Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part.

(a) Within **twenty-four (24) hours**, Respondents shall release Petitioner from immigration detention under conditions consistent with applicable statutory and regulatory authority; and

(b) Within **two (2) business days**, Respondents shall file a status report with the Court confirming Petitioner's release.

(2) Petitioner's request for a permanent injunction (dkt. # 1) is DENIED.

(3) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The parties are encouraged to meet and confer prior to filing any motion.

Dated this 18th day of September, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge